## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------x

In re:

CONNECTIONS COMMUNITY SUPPORT
PROGRAMS, INC.,

               Debtor.[1]

-------------------------------------------------------x

CONNECTIONS COMMUNITY SUPPORT
PROGRAMS, INC.,

               Plaintiff,

      -against-

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

               Defendant,

      -and-

CATHERINE DEVANEY MCKAY,
WILLIAM NORTHEY and
STEVEN DAVIS,

               Nominal
               Defendants.

-------------------------------------------------------x

Chapter 11

Case No. 21-10723-MFW

Adv. Proc. No. _____

## ADVERSARY COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Connections Community Support Programs, Inc. (**"Connections"** or the **"Debtor"**), by and through its undersigned counsel, as and for its Adversary Complaint seeking declaratory and injunctive relief against Defendant, Philadelphia Indemnity Insurance Company (**"Defendant"** or **"Underwriter"**), alleges as follows:

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030). The address of the Debtor's corporate headquarters is 3812 Lancaster Pike, Wilmington, Delaware 19805.

## NATURE OF THE ACTION

1.  This Adversary Proceeding against the Underwriter concerns insurance coverage under Philadelphia Indemnity Insurance Company Commercial Lines Policy No. PHSD1586185, (the **"D&O Policy"**) and Employed Lawyers Protection Policy No. PHSD1585634 (the **"Lawyer's Policy"**).  The coverage relates to claims asserted by individual "relator" plaintiffs, and separately by the United States of America and the State of Delaware in separate complaints, in the United States District Court for the District of Delaware in the action entitled *United States of America, and the State of Delaware, ex rel. Malika Spruill and Douglas Spruill v. Connections Community Support Programs, Inc.*, Civil Action No. 19-475-CFC (the **"Qui Tam Action"**), which implicates the D&O Policy.  The coverage also relates to claims asserted by United States of America in the United States District Court for the District of Delaware in the action entitled, and *United States of America v. Connections Community Support Programs, Inc., et al.*, Case No 1:21-cv-00514-UNA (the **"DEA Action"**), among other matters, which implicate both policies.

2.  The Debtor is a defendant in the *Qui Tam* Action along with its former Chief Executive Officer, Catherine Devaney McKay (**"McKay"**).

3.  The Debtor is a defendant in the DEA Action along with McKay, as well as its current Chief Executive Officer, William Northey (**"Northey"**) and current Chief Compliance Officer and General Counsel, Steven Davis (**"Davis,"** and with McKay and Northey, the **"Officer Defendants"**).

4.  The Underwriter denies responsibility for providing coverage for "Defense Costs" and other "Loss," as those terms are defined in the D&O Policy, to the Debtor and the Officer Defendants relating to most claims asserted in the *Qui Tam* Action.

5.      The Underwriter either denies responsibility, or has failed to claim responsibility, for providing coverage for "Defense Costs" and other "Loss," as those terms are defined in the D&O Policy, to the Debtor and the Officer Defendants relating to the claims asserted in the DEA Action.

6.      The Underwriter either denies responsibility, or has failed to claim responsibility, for providing coverage for "Defense Costs" and other "Loss," as those terms are defined in the Lawyer's Policy, to the Debtor and Davis relating to the claims asserted in the DEA Action.

7.      By this Adversary Proceeding, the Debtor seeks declaratory and injunctive relief requiring the Underwriter to advance defense Costs and to indemnify the Debtor and the Officer Defendants in connection with the claims asserted against them in the *Qui Tam* Action and in the DEA Action.

8.      In addition, the Debtor seeks declaratory relief and actual damages, as well as attorneys' fees and expenses under 11 U.S.C. § 362(k).  The Underwriter's denial of responsibility, or failure to affirm responsibility, for providing coverage for "Defense Costs" and other "Loss," as those terms are defined in the D&O Policy, particularly as it applies to the claims asserted by the United States and the State of Delaware in the *Qui Tam* Action, seeks to exercise control over property of the Debtor's estate and, therefore, constitutes a violation of the automatic stay under 11 U.S.C. § 362(a)(3).  In particular, the D&O Policy, its proceeds and the Underwriter's duty to advance "Defense Costs" constitute property of the Debtor's estate over which the Underwriter has exercised control by virtue of its refusal and failure to advance Defense Costs.

## JURISDICTION AND VENUE

9.     The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.

10.     This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).  Pursuant to Rules 7008-1 and 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this adversary proceeding to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

11.     Jurisdiction is also proper pursuant to 28 U.S.C. §§ 2201-2202 in that there exists an actual justiciable controversy as to which the Debtor requires a declaration of its rights by this Court and injunctive relief obligating the Underwriter to comply with its contractual obligations under the Policy.

12.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

13.     Plaintiff, Connections Community Support Programs, Inc., is a non-profit corporation duly organized and existing under the laws of the State of Delaware.  Connections' principal place of business is located at 3821 Lancaster Pike, Wilmington, DE, 19805.

14.     Upon information and belief, Defendant, Philadelphia Indemnity Insurance Company, is a Pennsylvania Insurance Business Corporation.  Upon information and belief, the Underwriter's principal place of business at One Bala Plaza, Suite 100, Bala Cynwyd, PA 19004.

15.     Nominal Defendant, Catherine Devaney McKay, served as Connections' CEO between 1985 and September 30, 2019.  McKay is a Nominal Defendant in an abundance of caution that she constitutes a necessary party.

16.     Nominal Defendant, William Northey, has served as Connections' CEO from October 1, 2019 through the present.  Prior to becoming Connections' CEO, Northey served as Connections' Chief Operating Officer.  Northey is a Nominal Defendant in an abundance of caution that he constitutes a necessary party.

17.     Nominal Defendant, Steven Davis, has served as Connections' General Counsel since 2009.  Davis is a Nominal Defendant in an abundance of caution that he constitutes a necessary party.

## THE POLICIES

### The D&O Policy

18.     The Underwriter issued the D&O Policy with effective dates of coverage from October 30, 2020 to October 30, 2021.

19.     The D&O Policy has seven coverage parts, including (1) a "Not-for-Profit Organization Directors & Officers Liability Insurance" part, with a Limit of Liability of three million dollars ($3,000,000), and (2) an "Employment Practices Liability Insurance" part, with a Limit of Liability of one million dollars ($1,000,000), for an Aggregate Limit of Liability of four million dollars ($4,000,000).

20.     The D&O Policy includes an Endorsement under the Not-for-Profit Organization Directors & Officers Liability Insurance part to provide excess coverage as follows:

> Upon the exhaustion of the Limits of Liability available to all **Insureds** as shown in Item 3. (A) of the Declarations, a separate limit of $1,000,000 shall be available to officers and directors for all **Claims** for

which coverage is provided under Paragraph A. of Section I. INSURING AGREEMENTS.

21. The D&O Policy includes an Endorsement entitled "Additional Defense Cost Limit Endorsement," which provides, in relevant part, as follows:

> D. Defense Cost shall be part of the Limit of Liability specified in Item 3 of the Declarations. Payment by the Underwriter of Defense Cost incurred on account of any Claim shall serve to reduce the Limit of Liability stated in Item 3 of the Declarations.
>
> Notwithstanding the above, an additional limit for Defense Cost only (the "Additional Defense Cost Limit") shall be available in an amount not to exceed $2,000,000. This Defense Cost only limit shall apply regardless of the number of Claims. The Additional Defense Cost Limit shall be in addition to, and not a part of the Limit of Liability specified in Item 3 of the Declarations. Any Defense Cost incurred on account of any Claim shall apply first to and shall reduce the Additional Defense Cost Limit.

22. The D&O Policy provides three "Insuring Agreements" under its Not-for-Profit Organization Directors & Officers Liability Insurance part as follows:

> A. The **Underwriter** will pay on behalf of the **Individual Insured**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the **Extension Period**), and reported to the **Underwriter** pursuant to the terms of this **Policy**, for **D&O Wrongful Acts**, except to the extent the **Organization** has indemnified the **Individual Insureds** for such **Loss**.
>
> B. The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against **Individual Insureds** during the **Policy Period** (or, if applicable, during the **Extension Period**), and reported to the **Underwriter** pursuant to the terms of this **Policy**, for **D&O Wrongful Acts**, if the **Organization** has indemnified such **Individual Insureds** for such **Loss**.
>
> C. The **Underwriter** will pay on behalf of the **Organization**, **Loss** from **Claims** made against the **Organization** during the **Policy Period** (or, if applicable, during the **Extension Period**), and reported to the **Underwriter** pursuant to the terms of this **Policy**, for a **D&O Wrongful Act**.

23. The D&O Policy also provides for an "Order of Payments" as follows:

> It is further understood and agreed that if a Loss shall be payable under more than one of the INSURING AGREEMENTS in Part 1 Not-for-Profit

Organization Directors & Officers Liability Insurance, then the Underwriter shall, to the maximum extent practicable and subject at all times to the Underwriter's Limits of Liability specified in the Declarations, pay such Loss as follows:

1. First, the Underwriter shall pay that Loss, if any, which the Underwriter may be liable to pay on behalf of the Individual Insureds Section I. INSURING AGREEMENTS, Item A.;

2. Second, the Underwriter shall pay that Loss, if any, which the Underwriter may be liable to pay on behalf of the Organization for Claims made against Individual Insureds and indemnified by the Organization under Section I. INSURING AGREEMENTS, Item B.;

3. Third, the Underwriter shall make such other payments which the Underwriter may be liable to pay on behalf of the Organization for Claims made against the Organization under Section I. INSURING AGREEMENTS, Item C.

24.     The D&O Policy further provides an "Insuring Agreement" under its Employment Practices Liability Insurance part as follows:

A.    The **Underwriter** will pay on behalf of the **Insured**, **Loss** from **Claims** made against the **Insured** during the **Policy Period** (or, if applicable, during the **Extension Period**), and reported to the **Underwriter** pursuant to the terms of this **Policy**, for an **Employment Practices Act.**

25.     Under the D&O Policy, Defendant, Philadelphia Indemnity Insurance Company, is the "Underwriter," and Connections (and its subsidiaries) is the "Organization."

26.     Under the D&O Policy, the Officer Defendants are "Individual Insureds."

27.     The D&O Policy defines "D&O Wrongful Act," among other things, as any actual or alleged "[a]ct, error, omission, misstatement, misleading statement, neglect, breach of duty or **Personal & Advertising Injury** committed or attempted by an **Individual Insured** in his/her capacity as an **Individual Insured**; or by the **Organization**."

28.     The D&O Policy defines "Employment Practice Act" as, among other things, any actual or alleged:

7

1. Wrongful dismissal, discharge or termination of employment; . . .

4. Wrongful failure to promote;

5. Violation of employment discrimination laws (including harassment);

6. Wrongful deprivation of a career opportunity; . . .

13. Employment related retaliatory treatment; . . .

15. Wrongful demotion;

16. Negligent reassignment. . . .

29.     The D&O Policy defines "Wrongful Act," in relevant part, as follows:

1. With respect to Part 1, any D&O Wrongful Act,

2. With respect to Part 2, any Employment Practices Act.

30.     The D&O Policy Defines "Claim" as, among other things:

a. Any written demand for monetary or non-monetary relief (including injunctive); or

b. Any civil proceeding, including any appeals therefrom, commenced by the filing, notice or service of complaint, pleading, summons or similar document against "an Insured for a Wrongful Act."

31.     The D&O Policy defines "Loss" as "Damages" and "Defense Cost," but excludes,

among other things, "civil fines and penalties imposed by law."

32.     The Policy defines "Damage" as

a monetary judgment, award or settlement, including punitive and exemplary damages or multiple portion thereof, (including pre and post judgment interest thereon) to the extent such punitive and exemplary damages or multiple portion thereof, are insurable under applicable law of any jurisdiction which has a substantial relationship to the **Insured** or to the **Claim** seeking such damage, and which is most favorable to the insurability of such damage.

33.     The D&O Policy defines "Defense Costs" as, among other things,

Any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim**, whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter**, in the investigation, adjustment, defense and appeal of a **Claim**. . . .

34. The D&O Policy also contains provisions relating to "Defense and Settlement," including those relating to advancement of Defense Costs, including:

A. The **Insured** and not the **Underwriter** shall have the responsibility to defend any **Claim**. . . .

B. If the **Insured** has assumed the defense of a **Claim** pursuant to A. above, the **Underwriter** shall advance **Defense Costs** prior to the final disposition of a **Claim**. The **Insured** shall elect counsel of its choice subject to approval by the **Underwriter**, such approval shall not be unreasonably withheld. The **Underwriter** shall not be liable for **Defense Costs** incurred, settlements made or judgments admitted by the **Insured** without the **Underwriter's** prior written consent, which shall not be unreasonably withheld.

**The Lawyer's Policy**

35. The Underwriter issued the Lawyer's Policy with effective dates of coverage from October 30, 2020 to October 30, 2021.

36. The Lawyer's Policy that the Debtor purchased from the Underwriter provides one million dollars ($1,000,000) in aggregate coverage, including "Defense Costs."

37. The Lawyer's Policy provides professional liability coverage as follows:

The **Underwriter** shall pay on behalf of the **Individual Insured**, **Loss** from **Claims** first made against any **Individual Insured** during the **Policy Period** (or, if applicable, during the Extended Reporting Period), and reported to the **Underwriter** pursuant to the terms of this Policy and excess to any valid and collectible directors and officers liability insurance (including any deductible or self insured retention), for **Wrongful Acts**, except to the extent the Company has indemnified such **Individual Insured** for such **Loss**.

38. The Lawyer's Policy further provides the Debtor indemnity coverage as follows:

The **Underwriter** shall pay on behalf of the **Company**, **Loss** from **Claims** first made against any **Individual Insured** during the **Policy Period** (or, if applicable, during the Extended Reporting Period),

9

and reported to the **Underwriter** pursuant to the terms of this Policy, and excess to any valid and collectible directors and officers liability insurance (including any deductible or self insured retention), and excess of the **Retention**, for **Wrongful Acts**, to the extent the **Company** has indemnified such **Individual Insured** for such **Loss**.

39.   And the Lawyer's Policy further provides for a "DEFENSE" as follows:

The **Insured** and not the **Underwriter** shall have the responsibility to defend any **Claim**. However, the **Insured** shall have the right, as soon as practicable after a **Claim** is first made, to tender the defense of such **Claim** to the **Underwriter**. Upon written notice to the **Underwriter** of such election by the **Insured** and subject to all of the provisions of Clause VI, Section C. DEFENSE AND SETTLEMENT, the **Underwriter** shall undertake and manage the defense of such **Claim**.

40.   The Lawyer's Policy includes an Endorsement which provides, in relevant part, as

follows:

Defense Costs paid by the Underwriter are in addition to and not a part of the Limit of Liability specified in Item 2. of the Declarations. Payment by the Underwriter of Defense Costs incurred on account of any Claim will not reduce the Limit of Liability stated in Item 2. of the Declarations. The most the Underwriter will pay for Defense Costs is equal to the applicable Limit of Liability stated in Item 2. of the Declarations. The Underwriter is not obligated to pay any Loss after the applicable Limit of Liability has been exhausted.

41.   Under the Lawyer's Policy, Defendant, Philadelphia Indemnity Insurance

Company, is the "Underwriter."

42.   Under the Lawyer's Policy, the Debtor and "Individual Insured" are the "Insureds".

43.   Under the Lawyer's Policy, "Individual Insured" includes any past, present or

future "In-House Counsel," which includes Davis.

44.   The Lawyer's Policy defines "Wrongful Act," among other things, as any

"negligent act, error, omission, breach of duty, misstatement or misleading statement allegedly

committed or omitted on or after the **Retroactive Date** by an **Individual Insured** but solely in the performance of **Legal Professional Services**."

45.     The Lawyer's Policy Defines "Claim" as, among other things "a written demand for monetary or non-monetary relief including a complaint or similar pleading . . . ."

46.     The Lawyer's Policy defines "Loss" as "Damages" and "Defense Cost," but excludes, among other things, "civil fines and penalties imposed by law."

47.     The Lawyer's Policy defines "Damage" as

> a monetary judgment, award or settlement, including punitive and exemplary damages or multiple portion thereof, (including pre and post judgment interest thereon) to the extent such punitive and exemplary damages or multiple portion thereof, are insurable under applicable law of any jurisdiction which has a substantial relationship to the **Insured** or to the **Claim** seeking such damage, and which is most favorable to the insurability of such damage.

48.     The Lawyer's Policy defines "Defense Costs" as, among other things,

> Any reasonable and necessary legal fees and expenses incurred in the defense of a **Claim**, whether by the **Insured** with the **Underwriter's** consent or directly by the **Underwriter**, in the investigation, adjustment, defense and appeal of a Claim . . . .

49.     The D&O Policy also contains provisions relating to "Defense and Settlement," including, among other things: "If the **Insured** is defending a **Claim** pursuant to Insuring Agreement A. above, the **Underwriter** shall advance **Defense Costs** prior to the final disposition of a **Claim**."

## THE *QUI TAM* ACTION

50.     On or about March 7, 2019, two of Connections' former employees – Malika Spruill and Douglas Spruill (the **"Relators"**) – commenced the *Qui Tam* Action.

51.     On June 26, 2019, the Relators filed a First Amended Complaint in the *Qui Tam* Action.  Although Connections became aware of the Relator's *Qui Tam* Action, the original

Complaint and First Amended Complaint were filed under seal and were inaccessible until April 9, 2021.

52.     Upon information and belief, having been prompted by the Complaint in the *Qui Tam* Action, the United States Department of Justice (the **"DOJ"**) opened an investigation against Connections concerning certain billing issues and alleged noncompliant methadone documentation.

53.     Between March 2019 and April 9, 2021, Connections incurred over $1.2 million in unreimbursed expenses in connection with the DOJ investigation.

54.     On April 9, 2021, the DOJ filed a Notice of Partial Intervention and a Complaint in Intervention (the **"DOJ Complaint"**) joining in certain counts of the *Qui Tam* Action against only the Debtor.  (A copy of the DOJ Complaint is attached hereto as Exhibit "A").

55.     As a result of the Notice of Partial Intervention and the separate DOJ Complaint, the DOJ assumed primary responsibility for pursuing the claims in the DOJ Complaint against the Debtor.

56.     The DOJ Complaint in the *Qui Tam* Action asserts two causes of action against the Debtor alone under the False Claims Act, 31 U.S.C. §§ 3729-3733, relating to alleged false records and false claims for reimbursement though the United States' Medicare and Medicaid programs, and in the State of Delaware, through its DSAMH programs.

57.     As a result of the Notice of Partial Intervention, the District Court in the *Qui Tam* Action ordered the action unsealed, including unsealing the First Amended Complaint.  (A copy of the First Amended Complaint is attached hereto as Exhibit "B").

58.     The First Amended Complaint in the *Qui Tam* Action alleges six causes of action against the Debtor and McKay under the False Claims Act, 31 U.S.C. §§ 3729-3733.  The claims

relate to alleged false records and false claims for reimbursement though the United States' Medicare and Medicaid programs and in the State of Delaware, through its Medicaid and Division of Substance Abuse and Mental Health (**"DSAMH"**) programs.

59. The First Amended Complaint in the *Qui Tam* Action further alleges six causes of action against the Debtor and McKay under the Delaware False Claims and Reporting Act, 6 *Del. C.* § 1201 *et seq.* The claims similarly relate to alleged false records and false claims for reimbursement though the United States' Medicare and Medicaid programs and in the State of Delaware, through its Medicaid and DSAMH programs.

60. The First Amended Complaint in the *Qui Tam* Action further alleges two causes of action for employee retaliation under 31 U.S.C. § 3730(H)(1) relating to the Debtor's and McKay's alleged discriminatory treatment of the Relators.

61. The First Amended Complaint in the *Qui Tam* Action further alleges two causes of action for employee retaliation under 6 *Del. C.* § 1208 relating to the Debtor's and McKay's alleged discriminatory treatment of the Relators.

62. On April 12, 2021, the State of Delaware filed a Notice of Intervention in the *Qui Tam* Action.

63. On April 16, 2021, the State of Delaware filed its First Intervenor Complaint (the **"Delaware Complaint"**) in which it intervened, in part, in the *Qui Tam* Action. (A copy of the Delaware Complaint is attached hereto as Exhibit "C").

64. The Delaware Complaint asserts two causes of action against the Debtor under the Delaware False Claims and Reporting Act, 6 *Del. C.* § 1201 *et seq.* (the **"DFCRA"**), relating to alleged false records and false claims for reimbursement which constitute violations of the False Claims Act.

65.     The First Amended Complaint in the *Qui Tam* Action, the DOJ Complaint, and the Delaware Complaint constitute Claims under the Policy in that they are demands for monetary or non-monetary relief and are civil proceedings commenced by the filing, notice or service of complaint, pleading, summons or similar document against an Insured for a Wrongful Act.

66.     The Claims in the First Amended Complaint, the DOJ Complaint and the Delaware Complaint include Claims relating to D&O Wrongful Acts that are covered under the Policy.

67.     The Claims in the First Amended Complaint include Claims relating to Employment Practice Acts that are covered under the Policy.

68.     The Claims in the First Amended Complaint, the DOJ Complaint and the Delaware Complaint have triggered the three "Insuring Agreements" under the Policy's Not-for-Profit Organization Directors & Officers Liability Insurance part.

69.     The Claims in the First Amended Complaint have triggered the "Insuring Agreement" under the Policy's Employment Practices Liability Insurance part.

### THE DEA ACTION

70.     Along with its DOJ Complaint, the United States of America filed its separate Complaint in the DEA Action (the **"DEA Complaint"**) on April 9, 2021.  (A copy of the DEA Complaint is attached hereto as Exhibit "D").

71.     The DEA Complaint asserts two causes of action against the Debtor and the Officer Defendants under the Comprehensive Drug Abuse Prevention Control Act of 1970, 21 U.S.C. §§ 801, *et seq*.  The claims relate to alleged negligence in failing to maintain certain books and records and in failing to provide certain reports.

72.     The Claims in the DEA Complaint include Claims relating to D&O Wrongful Acts that are covered under the Policy.

73. The Claims in the DEA Complaint have triggered the three "Insuring Agreements" under the Policy's Not-for-Profit Organization Directors & Officers Liability Insurance part.

74. The Claims in the DEA Complaint have triggered coverage under the Lawyer's Policy.

## THE DEBTOR'S CHAPTER 11 CASE

75. Prompted by the *Qui Tam* Action and the DEA Action, among other reasons, on April 19, 2021 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware the **"Chapter 11 Case"**).

76. Upon the Debtor filing its Chapter 11 Case, the D&O Policy and the Lawyer's Policy became property of the Debtor's Estate under 11 U.S.C. § 541(a).

77. In addition, given the claims asserted in the *Qui Tam* Action and in the DEA Action, (in particular, the claims in the DOJ Complaint, the Delaware Complaint and regarding related investigative expenses incurred that have not been indemnified), the proceeds of the D&O Policy constitute property of the Debtor's Estate under 11 U.S.C. § 541(a).

78. In addition, given the claims asserted in the *Qui Tam* Action and in the DEA Action, the Underwriter's duty to defend the Debtor and the Officer Defendants under the D&O Policy and the Lawyer's Policy constitute property of the Debtor's Estate under 11 U.S.C. § 541(a).

## THE UNDERWRITER FAILS TO ACCEPT COVERAGE OR PROVIDE A DEFENSE

79. Following the filing of the DOJ Complaint and the DEA Complaint, on April 12, 2021, Connections' insurance agent, Arthur Hall Insurance, submitted timely notices to the Underwriter for insurance coverage for defense and indemnification under the D&O Policy and

the Lawyer's Policy, in connection with the claims asserted in the DOJ Complaint and in the DEA Complaint.

80.     Upon being notified of the DOJ Complaint and the DEA Complaint, the Underwriter confirmed receipt of the submitted notice.

81.     On May 4, 2021, the Debtor's legal counsel submitted timely notices to the Underwriter for insurance coverage of Defense Costs and indemnification under the D&O Policy and the Lawyer's Policy, where applicable, in connection with the claims asserted in the *Qui Tam* Action, (including in the First Amended Complaint, the DOJ Complaint and the Delaware Complaint) and in the DEA Action.  The Debtor also demanded advancement of Defense Costs under the D&O Policy and the Lawyer's Policy on behalf of itself and the Officer Defendants.

82.     During a telephone conference with the Underwriter's counsel Bodell Bove, LLC on or about April 30, 2021, the Underwriter declared its intent to disclaim coverage, including for Defense Costs, relating to any D&O Wrongful Act asserted in the *Qui Tam* Action and in the DEA Action.

83.     As part of the Underwriter's reasoning for its intent to disclaim coverage was a prior disclaimer relating to a prior DOJ investigation and set forth in a letter from Underwriter's counsel to the Debtor, dated February 12, 2020.

84.     On or about June 2, 2021, the Underwriter issued its formal coverage letter regarding coverage under the D&O Policy relating to the *Qui Tam* Action.  In a nutshell, the Underwriter denied coverage for either Defense Costs or Loss relating to all claims that are the subject of the DOJ Complaint or the Delaware Complaint.

85.     Despite advising that it would issue the Underwriter's formal coverage position under the Lawyer's Policy, the Underwriter's counsel has, to date, failed to do so.

86. To date, the Underwriter has not advanced Defense Costs under the D&O Policy and the Lawyer's Policy in connection with the *Qui Tam* Action or in the DEA Action.

## CAUSES OF ACTION

### COUNT I
**(Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a))**

87. The Debtor incorporates by reference the allegations of paragraphs 1 through 86 inclusive, as though fully set forth herein.

88. The Debtor and the Officer Defendants are insureds under the D&O Policy and the Lawyer's Policy.

89. The D&O Policy and the Lawyer's Policy are property of the Debtor's Estate.

90. The proceeds of the D&O Policy and the Lawyer's Policy are property of the Debtor's Estate.

91. The Underwriter's duty to advance Defense Costs under the D&O Policy and the Lawyer's Policy is property of the Debtor's estate.

92. At all times, the Debtor and the Officer Defendants complied with all terms of the D&O Policy and the Lawyer's Policy and satisfied all duties as insureds under the D&O Policy and the Lawyer's Policy.

93. The Debtor provided timely and adequate notice of the DOJ Complaint, the Delaware Complaint, the DEA Complaint and the First Amended Complaint, and the Underwriter was given the opportunity to investigate the factual and legal issues pertaining to the claims.

94. Pursuant to the terms of the D&O Policy and the Lawyer's Policy, the Underwriter is, and has been, obligated to defend and indemnify the Debtor and the Officer Defendants in connection with the claims asserted against them in the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint.

95.     Pursuant to the terms of the D&O Policy and the Lawyer's Policy, the Underwriter is, and has been, obligated to advance Defense Costs in connection with the claims asserted against the Debtor and the Officer Defendants in the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint.

96.     The Underwriter has failed to assume coverage and has wrongfully and erroneously asserted that the D&O Policy does not apply to the claims asserted in the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint, even though such coverage is clearly implicated.

97.     The Underwriter has wrongfully and erroneously failed to assume coverage responsibility under the Lawyer's Policy regarding claims asserted in the DEA Complaint, even though such coverage is clearly implicated.

98.     There exists an actual and justiciable controversy between the Debtor under the D&O Policy and the Lawyer's Policy and the Underwriter concerning coverage for and advancement of Defense Costs and for Damages under the D&O Policy and the Lawyer's Policy.

99.     The Debtor desires, and is entitled to, a judicial declaration of its rights and interests in, and the obligations of the Underwriter under, the D&O Policy and the Lawyer's Policy.

100.     The requested declaratory relief will serve a useful purpose in clarifying and establishing the Debtor's, the estate's, and the Officer Defendants' rights to advancement of Defense Costs and to recover the proceeds of the D&O Policy and the Lawyer's Policy.

101.     The requested declaratory relief requests the Court to interpret the terms of the D&O Policy and the Lawyer's Policy and to establish the rights and obligations of the parties under the D&O Policy and the Lawyer's Policy in connection with Defense Costs and Damages,

among other Loss, attributable to the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint.

102.    The Debtor seeks an order from this Court declaring that the Claims and respective Loss (including Defense Costs and Damages) incurred by the Debtor and the Officer Defendants in connection with the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint are covered under the D&O Policy and the Lawyer's Policy.

## COUNT II
### (Injunction)

103.    The Debtor incorporates by reference the allegations of paragraphs 1 through 102 inclusive, as though fully set forth herein.

104.    The Debtor and Officer Defendants are entitled to advancement of Defense Costs associated with the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint.

105.    Having been served with the DOJ Complaint, the Delaware Complaint, the DEA Complaint and the First Amended Complaint in April 2021, the Debtor and the Officer Defendants are currently forced to answer and defend against the claims asserted in those pleadings or suffer a default judgment.

106.    There exists an actual and justiciable controversy between the Debtor as the insured Organization under the D&O Policy and the Lawyer's Policy and the Underwriter concerning coverage for and advancement of Defense Costs.

107.    The Debtor desires, and is entitled to, a judicial declaration of its rights and interests in, and the obligations of the Underwriter under, the D&O Policy and the Lawyer's Policy.

108. The requested declaratory relief will serve a useful purpose in clarifying and establishing the Debtor's, the estate's, and the Officer Defendants' rights to advancement of Defense Costs.

109. The Debtor is likely to succeed in establishing its entitlement to advancement of Defense Costs.

110. Given that the Debtor has limited financial resources with which to defend itself or provide indemnification to the Officer Defendants to defend themselves with regard to the DOJ Complaint, the Delaware Complaint, the DEA Complaint and the First Amended Complaint, the Debtor will suffer immediate irreparable harm short of the advancement of Defense Costs to which it is entitled under the D&O Policy and the Lawyer's Policy.

111. The balance of equities in immediate enforcement of the Underwriter's obligations under the D&O Policy and the Lawyer's Policy weighs heavily in favor of the Debtor, as the Debtor is entitled to advancement of Defense Costs and any delay will risk its default in the *Qui Tam* Action and the DEA Action.

112. The Debtor is entitled to injunctive relief ordering the Underwriter to advance Defense Costs associated with the *Qui Tam* Action and the DEA Action.

## COUNT III
### (Breach of Contract)

113. The Debtor incorporates by reference the allegations of paragraphs 1 through 112 inclusive, as though fully set forth herein.

114. The D&O Policy and the Lawyer's Policy are enforceable contracts providing insurance coverage for "Loss" arising out of a "Wrongful Act" which gives rise to a "Claim" made against an insured during the policy period, as those terms are defined in the D&O Policy and the Lawyer's Policy and as detailed herein.

115.    The Debtor paid all premiums due and satisfied all conditions precedent in entering the insurance contract with the Underwriter.

116.    The Debtor and the Officer Defendants are Insureds under the D&O Policy and/or the Lawyer's Policy and have complied and continue to comply with all terms and conditions of the Policy.

117.    In breach of the D&O Policy and the Lawyer's Policy, the Underwriter has wrongfully disclaimed coverage, or refused to acknowledge coverage, for Defense Costs and Damage relating to the claims asserted in the DOJ Complaint, the Delaware Complaint, the DEA Complaint, and the First Amended Complaint.

118.    As a direct and proximate result of the Underwriter's breach of its contractual duties under the D&O Policy and the Lawyer's Policy, the Debtor has been forced to incur economic losses including defense costs in connection with the *Qui Tam* Action and the DEA Action (including over $1.2 million in expenses associated with an the investigation relating to the DEA Action), as well as fees and expenses associated with instituting the present action and being subjected to such litigation, and such other damages as may be proven at trial.

### COUNT IV
### (Violation of Automatic Stay)

119.    The Debtor incorporates by reference the allegations of paragraphs 1 through 118 inclusive, as though fully set forth herein.

120.    Under Section 362(a)(3) of the Bankruptcy Code, the Defendant is automatically stayed from exercising "control over property of the estate."

121.    All or part of the D&O Policy and the Lawyer's Policy, and their proceeds, are property of the Debtor's estate.

122. The Defendant's duty to defend and advance Defense Costs is property of the Debtor's estate.

123. The Defendant's refusal to cover claims, defend and advance Defense Costs in the *Qui Tam* Action and the DEA Action constitute the Defendant's wrongful control over property of the Debtor's estate.

124. The Defendants' control over property of the Debtor's estate constitutes a violation of Section 362(a)(3) of the Bankruptcy Code.

125. Accordingly, the Debtor is not only entitled to injunctive relief compelling the Defendant to assume defense obligations, but the Debtor is entitled to actual damages and the costs and expenses associated with compelling the Defendant's compliance with its obligations under the D&O Policy and the Lawyer's Policy.

WHEREFORE, the Debtor respectfully request that the Court enter a judgment in its favor and against the Underwriter as follows:

A.      On Count I, declaring that the Debtor and the Debtor and Officer Defendants are entitled to insurance coverage under the D&O and the Lawyer's Policy for Defense Costs, Damage, and other Loss, among other things, relating to the DOJ Complaint, the Delaware Complaint, the DEA Complaint and the First Amended Complaint filed in the *Qui Tam* Action and the DEA Action; and

B.      On Count II, entering injunctive relief requiring the Underwriter to advance the Debtor and the Officer Defendants Defense Costs relating to the DOJ Complaint, the Delaware Complaint, the DEA Complaint and the First Amended Complaint filed in the *Qui Tam* Action and the DEA Action;

C.      On Count III, entering a judgment that the Underwriter has breached the D&O Policy and the Lawyer's Policy by improperly and unreasonably declining coverage, or refusing to accept its coverage responsibility, relating to the DOJ Complaint, the Delaware Complaint, the DEA Complaint and the First Amended Complaint filed in the *Qui Tam* Action and the DEA Action (including costs associated with the investigation leading thereto) and awarding the Debtor damages in an amount to be determined at trial;

D.      On Count IV, declaring that the Defendant violated Section 362(a)(3) of the Bankruptcy Code, and award damages and attorney's fees as a result; and

E.    Granting such other relief as the Court deems just and equitable.

Dated: June 8, 2021
    Wilmington, Delaware                    **CHIPMAN BROWN CICERO & COLE, LLP**


                                            By: */s/ William E. Chipman, Jr.*
                                            William E. Chipman, Jr. (No. 3818)
                                            Mark L. Desgrosseilliers (No. 4083)
                                            Hercules Plaza
                                            1313 North Market Street, Suite 5400
                                            Wilmington, Delaware 19801
                                            Telephone:  (302) 295-0191
                                            Email: chipman@chipmanbrown.com
                                                       desgross@chipmanbrown.com

Of Counsel:

Adam D. Cole (*pro hac vice* to be filed)
**CHIPMAN BROWN CICERO & COLE, LLP**
501 Fifth Avenue, 15th Floor
New York, New York  10017
Phone:  (646) 685-8363
Email:  cole@chipmanbrown.com


                        *Attorneys for the Debtor*